IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                              No. CR 10-3093-006 JB

SANDRA HOLGUIN,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Notice of Appeal of Detention Order, filed March 15, 2011 (Doc. 330). The Court held an evidentiary hearing on May 11, 2011. The primary issue is whether the Court should vacate the Honorable Carmen E. Garza, United States Magistrate Judge's detention order, and release Defendant Sandra Holguin pre-trial on conditions. The Court grants Holguin's request for a hearing. Because, however, Plaintiff United States of America has proved, by a preponderance of the evidence, that Holguin is a flight risk, the Court affirms Judge Garza's Order denying Holguin conditions of release.

## FACTUAL BACKGROUND

The United States Pretrial Services bail report reflects that Holguin is a citizen of Mexico and is presently a legal permanent resident of the United States. She is self-employed as a cosmetologist. Holguin has family in Juarez, Mexico. She is in her eighth month of pregnancy, and the father lives in Juarez. She also has four children that are United States citizens.

The bail report shows that Holguin's criminal history includes two convictions:

12/19/2006    pled guilty or no contest to three counts: driving with a suspended license; no proof of insurance; failure to yield; defendant sentenced to 90 days unsupervised probation on the first count; and was ordered to pay a fine, fees,

                      and court costs for all three counts; two bench warrants were issued in the case: 6/9/2006 warrant for failure to appear; 4/17/2007 warrant for failure to pay.

03/25/2009      pled guilty or no contest, but it is uncertain if the plea was to all or only some of the four counts; driving with a suspended license; child not properly restrained; speeding; unlicensed driver; defendant remains pending sentence; two bench warrants were issued in this case: 12/20/2007 warrant for failure to appear; 5/7/2009 warrant for failure to appear (warrant remains active).

At the November 19, 2010 detention hearing, the United States proffered the results of a six-month crossing history for Holguin, as researched by a United States Border Patrol Agent, which indicated that, between May 24, 2010, and November 16, 2010 -- the six months proceeding her arrest -- Holguin re-entered the United States from Mexico twenty-three times, most recently in October, 2010.

At the May 11, 2011 hearing, Drug Enforcement Agency ("DEA") lead case agent Jerry Smith testified that the indictment against Holguin and her co-conspirators is the result of a lengthy investigation which included over four months of court-authorized Title III wiretap[1] interception of six different telephones and video surveillance of three different residences.  Smith testified that Holguin was repeatedly intercepted in conversations with co-Defendant Pablo Fuentes on his wiretapped telephone.  DEA agents, on multiple occasions, intercepted Holguin and Fuentes using what Smith alleged was code to discuss cocaine and drug proceeds, and to make arrangements to meet to exchange drugs and money.  Smith testified that, on at least one occasion, after one such telephone call, agents observed Holguin meeting Fuentes in a parking lot, where they exchanged a package.  Smith testified that, based on the agents' observations and intercepted calls before and after the meeting, he believes that the Holguin delivered cocaine to Fuentes in exchange for money.

---

[1] Title III of the Omnibus Crime Control and Safe Streets Act of 1968, codified at 18 U.S.C. §§ 2510 through 2522.

Smith further testified that Holguin had contact with a higher ranking drug trafficker for whom she collected approximately $9,300.00 in drug proceeds and that Holguin was directed to see to it that the proceeds were delivered to Mexico.

Holguin's counsel, Leon Schydlower, exposed weaknesses in the United States' case against Holguin. Mr. Schydlower solicited concessions from Smith that: (i) he could not say by a preponderance of the evidence that Holguin's intercepted telephone conversations -- which Smith asserts used terms related to automobiles as code to refer to drugs -- were about drugs or drug proceeds, and not about automobiles, see Transcript of Hearing Tr. at 33:1-5 (taken May 11, 2011)(Schydlower, Smith)("[Schydlower]: As far as you know it's more likely than not they were actually discussing a car . . . ? [Smith]: They could have been.")("Tr.");[2] (ii) Smith did not know whether Fuentes was the father of Holguin's children, see id. at 33:4-5 (Schydlower, Smith); (iii) Smith could not say by a preponderance of the evidence that a September 22, 2010 telephone call in which Fuentes and Holguin discussed money related to drugs or drug proceeds, see Tr. at 33:1-5 (Schydlower, Smith)("[Schydlower]: [C]an you state beyond a preponderance . . . whether that money had anything to do with drug, drug proceeds or whether it had to do with perhaps child support? [Smith]: No."); (iv) Smith could not say what was in a package Fuentes and Holguin exchanged on September 23, 2010, see Tr. at 35:23-25 (Schydlower, Smith)("[Schydlower]: You saw her give him some kind of bag you don't know what's in the bag? [Smith]: No."); and (v) Smith could not tie the $9,300.00 in alleged drug proceeds to narcotics, see Tr. at 39:3-6 (Schydlower, Smith)("[Schydlower]: Can you tie it to narcotics at all, Agent Smith? . . . [Smith:] No.").

---

[2] The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

**PROCEDURAL BACKGROUND**

On November 10, 2010, the Grand Jury returned a seven-count Indictment charging twenty-three people, including Holguin, with, among other things, conspiracy to possess with intent to distribute five kilograms and more of cocaine, contrary to 21 U.S.C. §§ 841(a)(1), and (b)(1)(A). On November 16, 2010, seventeen arrest warrants and seven search warrants were executed. Holguin was arrested on November 16, 2010. On November 17, 2010, Holguin had her initial appearance before Judge Garza. On November 18, 2010, Pretrial Services recommended pretrial detention in its bail report. On November 19, 2010, Holguin was arraigned and entered a plea of not guilty. Also on November 19, 2010, Judge Garza held a detention hearing, and she denied Holguin conditions of release. Judge Garza executed a Detention Order on November 22, 2010. See Doc. 125. Holguin moved Judge Garza to reconsider her Detention Order. See Amended Motion for Reconsideration of Detention Order, filed February 25, 2011 (Doc. 314). On March 1, 2011, Pretrial Services filed a Memorandum changing its recommendation to releasing Holguin into the custody of Virginia Estrada-Armendariz with conditions, including posting a $10,000.00 secured bond, pretrial supervision, and requiring that Holguin must seek and maintain employment and not travel outside of New Mexico. Judge Garza denied Holguin's Motion for Reconsideration. See Order Denying Amended Motion for Reconsideration of Detention Order, filed March 2, 2011 (Doc. 323).

Holguin appeals the order denying her conditions of release pursuant to 18 U.S.C. § 3145(b). Holguin requests that the Court review the order of detention that Judge Garza executed and allow her to live with an approved third-party custodian, at least during the pendency of her pregnancy. She submits that her children anchor her in the United States and contends, moreover, that electronic monitoring would adequately prevent her flight.

In advance of the hearing that Holguin requests and the Court scheduled for May 11, 2011, the United States on March 9, 2011, filed its Response to Defendant's Appeal of Pretrial Detention. See Doc. 338. The United States asks the Court to uphold Judge Garza's pretrial detention order. The United States argues that Holguin is a flight risk and danger to the community, and that there are no conditions or combination of conditions that can reasonably assure the safety of the community and her appearance for trial.

At the May 11, 2011 hearing, Holguin stated that her numerous crossings into Mexico were to see her grandmother, who is elderly and has been ill, and Holguin wanted to be close to her. See Tr. at 6:22-7:1 (Holguin). She testified that her she met her " baby's daddy" in El Paso and has lost contact with him while she has been detained pending trial. Tr. at 6:19-21 (Holguin). Holguin further testified that she was eight months pregnant at the time of the hearing and close to delivery. See Tr. at 7:2-5 (Holguin).

## STANDARD OF REVIEW BY THE DISTRICT COURT

"The standard of review for the district court's review of a magistrate judge's detention or release order under § 3145(a) is de novo." United States v. Cisneros, 328 F.3d 610, 616 n.1 (10th Cir. 2003). "When the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts de novo and must make an independent determination of the proper pretrial detention or conditions for release." United States v. Rueben, 974 F.2d 580, 585-86 (5th Cir. 1992). See United States v. Maull, 773 F.2d 1479, 1481 (8th Cir. 1985)(stating that a district court's review of magistrate judge's order setting bond was de novo). "[I]t is within the district court's authority to review a magistrate's release or detention order sua sponte." United States v. Cisneros, 328 F.3d at 616 (citing United States v. Spilotro, 786 F.2d 808, 815 (8th Cir. 1986)).

## STATUTORY PRESUMPTION AGAINST RELEASE

Pursuant to the Bail Reform Act, a defendant may be detained pending trial only after a hearing, held pursuant to 18 U.S.C. § 3142(f), and upon a finding "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). At such a hearing, the United States bears the burden of proving risk of flight by a preponderance of the evidence, and the burden of proving dangerousness by clear-and-convincing evidence. See 18 U.S.C. § 3142(f); United States v. Cisneros, 328 F.3d at 616. A statutory presumption arises "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if" a court "finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." 18 U.S.C. § 3142(e)(3). See United States v. Villapudus-Quintoro, No. 08-2308, 2009 WL 141931, at *1 (10th Cir. Jan. 22, 2009)(recognizing that 18 U.S.C. § 3142(e) establishes a rebuttable presumption favoring detention in the case of, among other defendants, certain alleged drug offenders).

> Under section 3142(e), upon a finding of probable cause that the defendant has committed a federal drug offense carrying a maximum prison term of ten years or more, a rebuttable presumption arises that no conditions of release will assure defendant's appearance and the safety of the community. Once the presumption is invoked, the burden of production shifts to the defendant. However, the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government. The defendant's burden of production is not heavy, but some evidence must be produced. Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain.

United States v. Stricklin, 932 F.2d 1353, 1354-55 (10th Cir. 1991).

To determine whether the defendant has rebutted the presumption, the court must consider:

...

(i) the nature and circumstances of the crime charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including family ties, employment, financial resources, community ties, drug or alcohol abuse history, and past conduct; and (iv) the nature and seriousness of the danger to the community or to an individual that would be posed by release.  See 18 U.S.C. § 3142(g).  Should the defendant satisfy his or her burden of production, the United States must then show by a preponderance of the evidence that the defendant presents a risk of flight, or by clear-and-convincing evidence that the defendant presents a danger to the community.  See United States v. Mercedes, 254 F.3d at 436; United States v. Stricklin, 932 F.2d at 1354-55 ("[T]he burden of persuasion regarding risk-of-flight and danger to the community always remains with the government.").  Notably, however, even if the defendant meets her burden of production, "the presumption remains a factor for consideration by the district court in determining whether to release or detain."  United States v. Stricklin, 932 F.2d at 1355 (citation omitted).  Accord United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001).  "The rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing."  18 U.S.C. § 3142(f).

## ANALYSIS

The Court concludes that Holguin is a flight risk and should be detained pending trial.  The statutory presumption is present in this case, because probable cause supports finding that Holguin conspired to possess with intent to distribute five kilograms and more of cocaine.  Pursuant to the 18 U.S.C. § 3142(g) factors, the Court finds that, based on the quantity of narcotics involved, Holguin's history of noncompliance with court orders and of failing to appear, and her ties to Mexico, a preponderance of the evidence supports finding that Holguin is a flight risk.  The Court is also unaware of any conditions, or a combination of conditions, that will adequately ensure

Holguin's presence as required.  See 18 U.S.C. § 3142(g).  Accordingly, the Court will order Holguin detained pending trial.

## I. THE STATUTORY PRESUMPTION IS PRESENT.

The Grand Jury has found probable cause to believe that Holguin conspired to possess with intent to distribute five kilograms and more of cocaine, contrary to 21 U.S.C. §§ 841(a)(1), and (b)(1)(a), in violation of 21 U.S.C. § 846.  "[T]he Tenth Circuit has explained that '[t]he grand jury indictment is sufficient to establish the finding of probable cause that defendant committed a federal drug offense with a maximum prison term of ten years or more.'"  United States v. Moreau, No. 07-cr-0388-JB, 2007 WL 2219412, at *4 (D.N.M. May 7, 2007)(quoting United States v. Silva, 7 F.3d 1046, 1046 (10th Cir. 1993)).  See United States v. Stone, 608 F.3d 939, 945 (6th Cir. 2010)("A grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which [s]he is charged." (citing United States v. Hazime, 762 F.2d 34, 37 (6th Cir. 1985)).  "Thus, when the government presents an indictment including charges listed in section 3142(e)(3), it has fulfilled its burden to establish the presumption in favor of detention."  United States v. Stone, 608 F.3d at 945.  See United States v. Cruz, 23 F.3d 395, at *1 (1st Cir. 1994)("The grand jury indictment . . . gave the district court probable cause to believe that appellant had committed a crime of violence . . . .  This, in turn, triggered the rebuttable presumption contained in § 3142(e)." (citing United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991)(per curiam))); United States v. Silva, 7 F.3d at 1046; United States v. v. Quartermaine, 913 F.2d 910, 916 (11th Cir. 1990)("A grand jury indictment provides the probable cause required by the statute to trigger the presumption." (citing United States v. Hurtado, 779 F.2d 1467, 1479 (11th Cir. 1985))); United States v. Williams, 903 F.2d 844, at *1 (D.C. Cir. 1990)("Courts of appeals, however, have uniformly held that a judicial officer may rely on a grand jury indictment to establish probable cause

for the purposes of triggering the rebuttable presumption of section 3142(e)." (citing United States v. Vargas, 804 F.2d 157, 163 (1st Cir. 1986); United States v. Suppa, 799 F.2d 115, 118-19 (3d Cir. 1986); United States v. Dominguez, 783 F.2d 702, 706 n.7 (7th Cir. 1986); United States v. Hurtado, 779 F.2d 1467, 1477-79 (11th Cir. 1985); United States v. Contreras, 776 F.2d 51 (2d Cir. 1985); United States v. Hazime, 762 F.2d 34, 37 (6th Cir. 1985); United States v. Mosuro, 648 F. Supp. 316, 318 (D.D.C. 1986))). Because probable cause exists to believe Holguin violated the statutory provisions -- which carries a ten-year minimum sentence under 21 U.S.C. § 841(b)(1)(A)(viii) -- a presumption arises "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(stating this presumption applies to Controlled Substances Act violations "for which a maximum term of imprisonment of ten years or more is prescribed").

## II. THE COURT CONCLUDES THAT HOLGUIN IS, BY A PRESUMPTION OF THE EVIDENCE, A FLIGHT RISK, BUT THE COURT IS NOT PREPARED TO SAY THAT HOLGUIN IS, BY CLEAR-AND-CONVINCING EVIDENCE, A DANGER TO THE COMMUNITY.

The Court concludes that it will detain Holguin pending trial. The United States argues that Holguin must be detained pending trial because she is, by a preponderance of the evidence, a flight-risk, and, by clear-and-convincing evidence, a danger to the community. The United States contends that it presents strong evidence supporting a conviction under 21 U.S.C. § 841(a)(1), (b)(1)(A), which would subject Holguin to a lengthy term of incarceration followed by deportation. As such, the United States contends, no condition or combination of conditions will adequately deter Holguin's flight and ensure the community's safety.

Holguin responds that she has strong ties to the community. She has four children that are United States citizens. She also asserts that her pregnancy makes her unlikely to flee. Holguin

requests that the Court release her to an approved third-party custodian and impose electronic monitoring.

The Court concludes that Holguin meets her burden of production in response to the statutory presumption favoring detention. See United States v. Stricklin, 932 F.2d at 1355 ("The defendant's burden of production is not heavy, but some evidence must be produced."). While Holguin has met her burden of production, the presumption "remains a factor for consideration by the district court in determining whether to release or detain." United States v. Stricklin, 932 F.2d at 1355 (citation omitted). The Court further concludes that the United States has shown, by a preponderance of the evidence, that Holguin presents a risk of flight. While participating in drug sales is harmful to the community, the Court is not ready to say that the United States has shown, by clear-and-convincing evidence, that Holguin presents a danger to the community. See United States v. Mercedes, 254 F.3d at 436; United States v. Stricklin, 932 F.2d at 1354-55 ("[T]he burden of persuasion regarding risk-of-flight and danger to the community always remains with the government."). The Court also concludes that no conditions that Holguin proposes or that the Court knows to be available will adequately deter Holguin's flight. She has facility traveling to Mexico -- traveling there twenty-three times in the six months before her arrest -- and she has family there. If she is convicted, her residency status will likely be revoked, and she will be deported. The Court acknowledges that Holguin's pregnancy presents difficulties and that delivering a child while in pretrial detention is far from ideal; nonetheless, her pregnancy does not effectively figure into the factors the Court must consider under 18 U.S.C. § 3142(g), at least beyond its affect on her propensity to flee to present a danger to the community. Because the Court "finds that no condition or combination of conditions will reasonably assure the appearance of [Holguin] as required . . . , [the Court] shall order the detention of the [Holguin] before trial." 18 U.S.C. § 3142(e)(1).

**A.     HOLGUIN IS A FLIGHT RISK.**

The Court finds, by the preponderance of the evidence, that Holguin is a flight risk. She faces charges that carry substantial sentences. A conviction would likely lead to deportation. Holguin travels frequently to Mexico and has ties there. Consequently, the Court concludes that if it were to release Holguin pending trial, it is more likely than not that she would flee.

**1.     The Nature and Circumstances of the Crime Charged Demonstrate Holguin Is a Flight Risk.**

The crime with which Holguin is charged carries substantial penalties. Holguin is charged with conspiring to traffic cocaine, which carries a ten-year statutory minimum term of imprisonment. See 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii). This Court has previously noted: "The rebuttable presumption in drug-trafficking cases is statutory, and arises out of Congress' concern that individuals involved in drug trafficking often have foreign contacts and the ability to leave the country, and incentives to remain active in the drug trade." United States v. Disher, 650 F. Supp. 2d 1131, 1136 (D.N.M. 2009)(Browning, J.)(citing United States v. Moreno, 30 F.3d 127, at *2 (1st Cir. 1994). This concern regarding drug-trafficking is further illuminated by its inclusion in 18 U.S.C. § 3142(g) as a particular factor for consideration in making a determination regarding detention. Holguin has been charged in a large-scale cocaine conspiracy and faces a substantial sentence. The Court therefore finds that this factor counsels in favor of detaining Holguin pending trial.

**2.     The Weight of the United States' Evidence Against Holguin Gives Some Support to Finding That She Is a Flight Risk.**

The weight of the United States' evidence against Holguin favors detaining her before trial, if only weakly. "[T]he weight of the evidence offered in support of [the United States' case in general] is significant," giving Holguin reason to flee if she is released pending trial. The indictment

against Holguin and her co-conspirators is the result of a lengthy investigation which included over four months of court-authorized Title III wiretap interception of six different telephones and video surveillance of three different residences.

While the United States presents weighty evidence to support its conspiracy case generally, the evidence against Holguin, at least on the current record before the Court, is not particularly strong. Smith testified that Holguin was repeatedly intercepted in conversations with co-Defendant Pablo Fuentes on his wiretapped telephone. DEA agents intercepted Holguin and Fuentes discussing cocaine and drug proceeds in code, and making arrangements to meet to exchange drugs and money. Smith testified that, on at least one occasion, after one such telephone call, agents observed Holguin meeting Fuentes in a parking lot. Smith testified that, based on the agents' observations and intercepted calls before and after the meeting, he believes that the Holguin delivered cocaine to Fuentes in exchange for money. Smith further testified that Holguin had contact with a higher ranking drug trafficker for whom she collected drug proceeds and that Holguin was directed to see to it that the proceeds were delivered to Mexico. At the hearing, Holguin's counsel, Mr. Schydlower exposed weaknesses in the United States' case against Holguin. Mr. Schydlower solicited concessions from Smith that: (i) he could not say by a preponderance of the evidence that Holguin's intercepted telephone conversations -- which Smith asserts used terms related to automobiles as code to refer to drugs -- were about drugs or drug proceeds, and not about automobiles, see Tr. at 33:1-5 (Schydlower, Smith)("[Schydlower]: As far as you know it's more likely than not they were actually discussing a car . . . ? [Smith]: They could have been."); (ii) Smith did not know whether Fuentes was the father of Holguin's children, see id. at 33:4-5 (Schydlower, Smith); (iii) Smith could not say by a preponderance of the evidence that a September 22, 2010 telephone call in which Fuentes and Holguin discussed money related to drugs or drug proceeds, and not other matters, such as child

support, see Tr. at 33:1-5 (Schydlower, Smith)("[Schydlower]: [C]an you state beyond a preponderance . . . whether that money had anything to do with drugs, drug proceeds or whether it had to do with perhaps child support? [Smith]: No."); (iv) Smith could not say what was in a package Fuentes and Holguin exchanged on September 23, 2010, see Tr. at 35:23-25 (Schydlower, Smith)("[Schydlower]: You saw her give him some kind of bag you don't know what's in the bag? [Smith]: No."); and (v) Smith could not tie the $9,300.00 in alleged drug proceeds to narcotics, see Tr. at 39:3-6 (Schydlower, Smith)("[Schydlower]: Can you tie it to narcotics at all, Agent Smith? . . . [Smith:] No."). Nonetheless, the Court believes that the totality of the circumstances supports, if weakly, finding that the United States' evidence against Holguin counsels for pretrial detention. Holguin was observed coordinating activities with Fuentes, who the United States contends is the head of the conspiracy in this case, meeting with him and exchanging at least one package in a parking lot. She was also heard discussing shepherding money back to Mexico. While this evidence is not overwhelming, it suggests in its totality, by a preponderance of the evidence, that Holguin participated in the conspiracy. See United States v. Cisneros, 328 F.3d at 618 (recognizing that the United States "need not offer all of its evidence" at the detention stage of the criminal proceeding). The Court thus finds that this factor weighs somewhat in favor of pretrial detention.

### 3. **Holguin's History and Characteristics Evince That She Is a Flight Risk.**

Holguin's history and characteristics offer further support for finding that she is a flight risk. Some of her characteristics demonstrate ties to the community. Holguin is a legal permanent resident of the United States. She has four children who are United States citizens, and she is close to delivering her fifth.

On the other hand, Holguin has had trouble following court orders. Although her criminal

history stems solely from two traffic charges, far less serious than what she faces here, in those two cases the defendant failed to appear in court as directed three times, and also failed to pay her fines and fees as the court directed. Additionally, Holguin appears to currently have an outstanding bench warrant for her failure to appear at sentencing on her most recent traffic violation. While Holguin's traffic violations are minor, her failure to appear in court and comply with court orders demonstrates a pattern and history of Holguin's tendency to ignore the laws of her community and her inconsistent ability to follow lawful orders, including those imposed by a court.

Holguin concedes that she frequently travels to Mexico, but asserts that she traveled there to see her elderly grandmother, who has been ill. According to information that the Border Patrol complied, Holguin has traveled to Mexico twenty-three times in the six months before her arrest. As a legal permanent resident of this country, Holguin will likely lose her status in the United States and will be deported if she is convicted. Holguin has family in Mexico. See United States v. Cisneros, 328 F.3d at 618 (noting a defendant's "close family in Mexico . . . and that in the past [the defendant] has traveled to Juarez with a sister and other family members" weighed in favor of detention). The Court is concerned about Holguin's facility with traveling to Mexico and her ties there, especially when she resides so close to the border.

In sum, by a preponderance of the evidence, Holguin is a flight risk given the serious penalties she faces, her history of failing to appear and comply with court orders, and Holguin's strong ties to Mexico and her frequent travel there. On balance, Holguin's ties to the community appear insufficient to prevent Holguin's flight. In light of the severity of the sentence she is facing, and the likelihood she will lose her residency status and be deported, and her ties to Mexico, Holguin has significant reason to abscond and avoid incarceration. The Court does not believe it can impose conditions that would adequately deter Holguin's flight and give itself and Pretrial

Services comfort that she would appear.  The Court does not believe the proposed conditions -- releasing Holguin into the custody of Estrada-Armendariz, requiring Holguin to post a $10,000.00 secured bond, submit to pretrial supervision, and seek and maintain employment and not travel outside of New Mexico -- are adequate to assure her appearance at Court.  Also, given Holguin's proximity to Mexico, electronic monitoring would be hardly any restriction on her ability to get to Mexico.

### B. THE COURT DOES NOT FIND CLEAR-AND-CONVINCING EVIDENCE HOLGUIN IS A DANGER TO THE COMMUNITY.

The Court finds evidence that Holguin is a danger to the community, but the Court is not ready to say the evidence is clear-and-convincing.  Because the United States has presented probable cause supporting Holguin's federal charges, the statutory presumption that Holguin poses a danger to the community is triggered.  Even though Holguin has met her burden of production in response to the statutory presumption favoring detention, the presumption remains a factor for the Court to consider in making its ultimate determination regarding detention.  See United States v. Stricklin, 932 F.2d at 1355 ("Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain.").  Holguin is charged with conspiring to traffic cocaine, a serious crime which "threatens to cause grave harm to society." Harmelin v. Michigan, 501 U.S. 957, 1002 (1991)(stating that the "possession, use, and distribution of illegal drugs represent one of the greatest problems affecting the health and welfare" of the United States).  Thus, beyond the presumption, the federal charges provide reason to deem Holguin a danger to the community.  See United States v. Pina-Aboite, 97 F. App'x at 836 (recognizing that 18 U.S.C. § 3142 "danger-to-the-community factor is not simply about physical violence; the risk that a defendant will continue to engage in drug trafficking constitutes a danger

to the community" (citing <u>United States v. Cook</u>, 880 F.2d 1158, 1161 (10th Cir. 1989)). Holguin's counsel, however, skillfully brought forth potential weaknesses in the United States case against Holguin at the May 11, 2011 hearing. Because Holguin has met her burden of production in response to the statutory presumption, and shown weaknesses in the United States' case against her, Court does not find, on the record before it, clear-and-convincing evidence that Holguin presents a danger to the community, and relies instead on Holguin being a flight risk in ordering her pretrial detention.

**IT IS ORDERED** that: (i) the Defendant's Notice of Appeal of Detention Order, filed March 15, 2011 (Doc. 330) is granted in part and denied in part; (ii) the Court grants Defendant Sandra Holguin's request for a hearing on this issue; (iii) the Court denies Holguin's request that it vacate the Honorable Carmen E. Garza, United States Magistrate Judge's Order denying her conditions of release; and (iv) the Court orders Holguin detained pending trial.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
  United States Attorney
Albuquerque, New Mexico

-- and --

Sarah M. Davenport
Elizabeth M. Martinez
  Assistant United States Attorneys
United States Attorney's Office
District of New Mexico
Las Cruces, New Mexico

    *Attorneys for the Plaintiff*

Leon Schydlower
El Paso, Texas

    *Attorney for the Defendant*